## GREAT WEST GRAIN & SEED CO. v. RAY.

### No. 4498.

Court of Civil Appeals of Texas. Eighth District.

April 3, 1947.

Rehearing Denied May 1, 1947.

W. B. Moss, of Sinton, and Ward & Brown, of Corpus Christi, for appellant. John Dawson, of Sinton, and J. W. Ragsdale, of Victoria, for appellee.

PRICE, Chief Justice.

This is an appeal from the judgment of the District Court of San Patricio County. Appellant sued appellee to recover for an alleged breached contract to deliver maize. At the close of appellant's testimony, on motion of defendant the court instructed a verdict in his favor and entered judgment thereon. Appellant declared on a written contract as follows:

"This confirms sale to Great We*ts* Grain Co., Fort Worth, Texas, today. Date 5–30–45 250 acres 300 tons (est.) Threshed Maize @ $30.00 per ton Less – 100 Tons—already-sold—Delivered cars at Sinton, Texas. All this is to be good, bright, dry, and not to exceed 15% moisture – 10% off for over 15% – to be loaded by Buyer not later than July 20, 1945.

Seller U. E. Ray.

Buyer E. J. Mutchler."

This contract is alleged to have been orally modified during July, 1945. In substance the modification is as follows: Appellee was to be allowed to deliver under aforesaid contract only grain containing 15% or less moisture; and total breach of contract was alleged in that appellee failed to deliver any maize thereunder. Appellee answered by a general denial, set up that as to the written contract heretofore set forth same was not to become binding until confirmed by appellants; that by letter dated June 1, 1945, received by him on June 4th, appellants sent him a purported letter of confirmation varying from the contract heretofore set out; that he immediately advised appellants that their confirmation varied from the contract and withdrew his offer to sell the maize. Appellants pleaded supplementally that said contract was binding without their confirmation.

The written memorandum upon which appellants in part based their case was signed by appellee and purported to be signed by E. J. Mutchler on behalf of appellants. In fact, one Beard, an employee of Mutchler, actually signed Mutchler's name thereto, however, at his direction. Beard, an employee of Mutchler and a witness on behalf of appellants, testified that the agreement was that appellants would confirm the contract. He was a disinterested witness, and there was no reason to doubt his testimony. Further, he is corroborated by the action of appellants. This contract was signed at Sinton, Texas, on May 30, 1945. By letter dated June 1, 1945, appellants purported to confirm the contract signed by their agents as aforesaid. Appellants' place of business was in Fort Worth. Appellee apparently lived in Sinton, or that seemed to be his post office address.

There can be no question but that the purported letter of confirmation varied from the contract evidenced by the memorandum of May 30, 1945, heretofore copied herein.

On June 4, 1945, or at least immediately on receipt of the purported confirmation, appellee wired appellants in substance that confirmation did not meet the terms of tentative contract and that his offer of sale was withdrawn. Appellants on June 9, 1945, sent appellee a letter substantially confirming the memorandum aforesaid of May 30, 1945.

Mutchler testified that some time in July appellee had a conversation with him wherein it was agreed that appellee would deliver to appellant the maize described in the contract of May 30, 1945, except that he would not be required to deliver any maize of over 15% moisture content. Appellee did not deliver any grain to appellant.

It appears from the evidence that appellee from June 27, 1945 to June 29, 1945, delivered to the Farmers' Grain Company some 216,000 pounds of maize; between June 15, and June 29, 1945, to the Eastern Seed & Elevator Company 296,415 pounds. Of this last amount 97,710 pounds the moisture content was 15% or less. Where appellee obtained this grain does not appear. There is no evidence that appellee had any maize growing in the state of Texas, no evidence that he purchased any acreage in the state of Texas on which maize was grown by others. It does appear that he told Mutchler that he had 250 acres of maize. Mutchler thought that some of this appellee had grown himself and some purchased from others.

There was evidence that the market value of maize at Sinton of 15% moisture content or less was $2.27 per cwt. on the cars, that it cost 8% to load same on the cars when delivered at Sinton.

In substance, appellee stated in his motion for an instructed verdict that no valid contract was consummated, in that as a condition to same coming into existence as a contract same was to be confirmed by appellants, that appellants refused to confirm the contract and appellee accepted their rejection and withdrew his offer to sell; that the testimony failed to show that the minds of the parties ever reached an agreement; that the evidence failed to show how much, if any, defendant raised on 250 acres in excess of a hundred tons previously sold by him.

It is thought that the correct disposition of this appeal depends upon the application of a few elementary principles of the Law of Contracts. Before attempting to apply same it is thought proper to make a formulation thereof. Where one party to a purported contract acts through an agent and such agent or the other party exacts as a condition that the contract be confirmed by the agent's principal, a failure or refusal to confirm by the principal, at the election of the other party terminates the contract. Perhaps it would be more exact to say that no contract comes into existence. Where a party has a right or duty to confirm or reject a contract, a purported confirmation varying in terms from the proposed contract is not a confirmation but a rejection of the contract. A principal refusing to confirm a contract made on his behalf subject to confirmation cannot claim under the purported contract where the other party accepts such rejection. He cannot, after the other party accepts the rejection by attempted confirmation, thereafter give validity to the contract. Flomerfelt v. Hume, 11 Tex.Civ.App. 30, 31 S.W. 679.

An agreement to be binding must be definite and certain. 12 Am.Jur. p. 554, par. 64; Yerion v. Allison, Tex.Civ.App., 242 S.W. 270; Wolert v. Arledge, 4 Tex. Civ.App. 692, 23 S.W. 1052; 10 Tex.Jur. pp. 175–178, par. 103; 37 Tex.Jur. p. 101, par. 19.

The evidence fails to show whether or not the maize referred to was threshed or unthreshed on May 30, 1945. Fails to show where same was located. Fails to show the location of the 250 acres the parties had in mind. Without some identification of this 250 acres it would be impossible to determine the obligation of the parties. We here deal with an executory contract for a sale, not a sale. Even though conceivably a contract may be rendered certain and definite by evidence, unless such evidence be offered establishing the requisite certainty it is unenforceable. As has been stated, the undisputed evidence was

that this contract was to be confirmed by appellants, that is, the contract evidenced by the memorandum of May 30, 1945. The evidence is likewise undisputed that the letter of June 1st was not a confirmation of the purported contract of May 30, 1945. It was tantamount to a rejection, rather than a confirmation. Appellee accepted the rejection before June 9, 1945, the date of the letter of appellants confirming the purported contract of May 30, 1945. There can be no doubt that there was no meeting of the minds of the parties on the terms of the purported contract of May 30, 1945. As was stated, Mutchler testified that appellee agreed to deliver the maize described in the contract of May 30, 1945, except that he was only to deliver maize of moisture content of 15% or less. A diligent search of the statement of facts fails to show how much maize appellee was bound to deliver under the purported contract. Maize may be a fungible, but it cannot be contended that plaintiff was bound to deliver anything but an excess over 100 tons produced on 250 acres. What 250 acres of land the parties had in mind does not appear from either the pleading or the evidence. Whether the land is situated in Texas or the Republic of Mexico or elsewhere does not appear. If appellants could by the evidence have made the extent of appellee's obligation definite and certain, they utterly failed to do so. The circumstance that appellee did deliver certain grain to other parties is too weak to justify an inference that same was from the 250 acres mentioned in the contract. In that the evidence tends to affirmatively establish that the minds of the parties never met on any particular 250 acres. Mutchler testified: "He said there were 250 acres of grain, some that he had raised himself and some that he had purchased from different farmers, and that he had already sold 100 tons."

It is thought that under the testimony if agreement there was the same was too indefinite to be enforceable. Rather the evidence fails to show a definite and certain contract.

No reversible error appearing, it is ordered that the judgment be in all things affirmed.

McGILL, Justice (dissenting).

I find myself unable to agree with my associates as to the disposition of this case. A firm conviction that the trial court was unwarranted in peremptorily instructing for appellee, impels me to dissent. The following opinion was prepared prior to the writing of the majority opinion by the Chief Justice. At the risk of duplication, I respectfully file it as my dissent.

Plaintiff alleged that on May 30, 1945, defendant and plaintiffs acting through their authorized agent, E. J. Mutchler, entered into an oral contract whereby defendant agreed to sell and plaintiffs agreed to buy 300 tons of threshed maize at $30 per ton, less 100 tons already sold, the maize to be 15% or less moisture, with a discount of 10% per cwt. if over 15% moisture, it being agreed that if storm or weather damaged the crop to the extent that it was unmerchantable defendant did not have to deliver to the extent the crop was unmerchantable, pursuant to which the parties on said date executed the following written instrument:

"This confirms sale to Great Wets Grain Co., Fort Worth, Texas, today. Date 5-30-45 250 acres 300 tons (est.) Threshed Maize @ $30.00 per ton Less — 100 Tons — already — sold — Delivered cars at Sinton, Texas, All this is to be good, bright, dry, and not to exceed 15% moisture — 10% off for over 15% — to be loaded by Buyer not later than July 20, 1945.

Seller U. E. Ray.
Buyer E. J. Mutchler."

That thereafter, during July, 1945, defendant orally agreed to deliver to plaintiffs the grain mentioned in the contract of May 30, 1945, except that the defendants should have the opportunity to deliver only grain which had less than 15% moisture, to which plaintiff through Mutchler agreed. That defendant failed and refused to deliver any grain and plaintiff was compelled to purchase grain on the open market at an advanced price because of defendant's breach of contract, to his damage in the sum of $3,080. Defendant answered by special exceptions, general denial, and alleged that on May 30, 1945, he executed a

tentative written agreement by which he proffered to sell to plaintiff threshed maize as specified in the written instrument above quoted; that such tentative offer was forwarded to plaintiff for confirmation and was not to be binding until confirmed by plaintiff; that on June 1, 1945, plaintiff wrote him a letter which was received by him on June 4, 1945, as follows:

"Mr. U. E. Ray,
Sinton, Texas.
Dear Sir:

This will confirm purchase through our representative Mr. E. J. Mutchler of 250 to 300 tons of thrashed maize @ $30.00 per ton delivered to our loader at Sinton by July 20th, less 100 tons which you had already sold out of your crop; the above maize to be 15% or less moisture with discount of 10% cwt if over 15%.

Thanking you, we are
Very truly yours,
Great West Grain & Seed Company
Lewis E. Meekins.";
LEM :kl

that immediately upon receipt of this letter he telegraphed plaintiff in reply to said letter:

"Letter of confirmation does not conform to terms of tentative agreement with Mr. Mutchler. My offer of sale is therefore withdrawn.
Signed U. E. Ray.";

that by reason of the foregoing no valid sale or purchase was ever entered into by the parties.

In the alternative he alleged that after he sent the above telegram Mutchler importuned him to sell his maize crop as alleged and told him it would seriously embarrass him unless he let him have the maize; that before July 20, 1945 he sought to deliver his maize to Mutchler at Sinton, Texas, and Mutchler declined to receive same. By supplemental petition plaintiff specially alleged that defendant's offer to sell the grain was binding upon its acceptance by E. J. Mutchler, plaintiff's duly authorized agent, and that there was no agreement that the offer was not to be binding until confirmed by plaintiff.

The material grounds for a peremptory instruction set forth in defendant's mo-

tion were in substance that no valid contract was consummated because the undisputed testimony required from plaintiff a confirmation of the original draft of the parties (the written instrument as above quoted) and the confirmation sent by plaintiff varied from such agreement and thereupon the defendant immediately withdrew his proposal to sell; that the undisputed testimony failed to show that the minds of the parties ever reached an agreement as to the matter in issue; and (paragraph II) that the proof failed to show how much grain, if any, defendant raised on 250 acres in excess of 100 tons previously sold by him. The judgment recites that the court was of the opinion that the motion was well taken, more especially paragraph II thereof.

Appellant's points challenge the correctness of the court's ruling on all grounds of the motion. Appellee in his brief has not answered the point challenging the ruling on paragraph II.

The evidence discloses that at all relevant times appellant was a partnership composed of Lewis E. Meekins and John C. Hicks, engaged in the grain business at Fort Worth, and that E. J. Mutchler was its agent for the purpose of making grain contracts in the Sinton territory. Mutchler testified that on May 30, 1945, defendant was in his place of business in Sinton and said that he had 250 acres of grain, some that he had raised himself and some that he had purchased from different farmers, and wanted to sell a couple of hundred tons if he could get $1.50 for it; that he told defendant the price was a little higher than he was paying but he would call up the Fort Worth office and ask them if they were interested and let him know; that he did phone the office at Fort Worth and later defendant returned to his store and he made an oral agreement with him for purchase of the grain. The oral agreement shown by Mutchler's testimony was substantially the same as the written agreement except that it was also verbally agreed that in the event defendant's grain crop should be destroyed by storm or otherwise he would not have to deliver anything. Mutchler testified that he prepared a written agreement similar to the one in

evidence, but that defendant objected to it and did not sign it and tore it up. In reference to what was said about a confirmation of the contract he testified that defendant said "Send me a confirmation letter in line with the phone conversation with the company". He did not sign the written instrument and was not present when it was signed. His name was signed by Mr. Garland Beard, who was employed in his store, after a telephone conversation with him. Beard testified that at the time he re-wrote the instrument and signed Mutchler's name to it he told defendant that the home office would confirm the contract; that it was made with the understanding they would confirm it. Lewis E. Meekins testified he had information from Mutchler that defendant wanted a letter confirming the contract he had with Mutchler. A letter from Mutchler to plaintiff dated June 4, 1945, stated that the letter of confirmation sent to defendant was not according to the contract and "my letters to you" and set out a form of confirmation to be sent defendant by plaintiff. On June 9, 1945, plaintiff wrote a letter of confirmation to defendant which did substantially comply with the written contract of June 1, 1945. Mutchler testified that defendant came in about the 9th or 11th of June, said he would start harvesting Thursday, and would start delivering grain to him, and if it tested over 15% moisture not to take it but to send it on down to Taft to apply on a 100 ton contract that he had sold without any moisture content, and that if he took a load of grain that tested over 15% moisture he would expect $1.50 for it, whereupon he (Mutchler) told his office girl who made the tickets on testing grain that if she took a load that tested over 15% he would take it out of her salary.

It seems clear from the above statement that a confirmation of the contract entered into by defendant and Mutchler was contemplated. However, the evidence falls short of establishing beyond issue that the contract should not be binding until confirmed. The written contract does not so stipulate. Mutchler's testimony and his letter to plaintiff go no further than to show that a confirmaion was contemplated. His oral testimony indicates that a confirmation of his telephone conversation with plaintiff was all that defendant requested. His letter and Beard's testimony go no further than to show that a confirmation of the contract was contemplated—not that such confirmation was a condition precedent to liability thereon. The written contract which "confirms" a sale has some significance. The word "confirm" points retrospectively to something done in the past. 8 Words and Phrases, Cumulative Pocket Supplement, citing Dodge v. Blood, 299 Mich. 364, 300 N.W. 121. Had the parties understood that no sale or binding contract of sale was to be effective until confirmation, the language of their written contract was, to say the least, inappropriate. Viewing the evidence as a whole, it is perfectly consistent with the existence of a valid, binding contract of sale subject to be defeated by a condition subsequent, viz., should there be no confirmation when the time for performance arrived. It was sufficient to raise an issue of whether or not there was such a contract, and a jury finding either way would have been determinative.

In Lathrop-Marshall Grain Co. v. Nash, Tex.Civ.App., 282 S.W. 824, there was such finding.

If there was such a contract plaintiffs did not seek to recover for its breach, but for the breach of a subsequent oral contract of June 9 or 11, 1945, alleged to refer to and constitute a modification of the original contract of May 30, 1945. It is immaterial therefore whether or not the transactions of May 30th constituted a binding contract. When on June 9th or 11th defendant stated that he would start delivering grain to plaintiff and stipulated that he would expect $1.50 for grain containing more than 15% moisture, and instructed plaintiff to send such grain to Taft, a reasonable inference would be that he referred to the grain which was the subject matter of prior dealings of the parties. An issue was raised of whether there was a contract of June 9th or 11th covering the grain mentioned in the deal-

ings of May 30th, which provided for delivery under the terms of the written agreement, except that defendant was not obligated to deliver grain containing more than 15% moisture. While Mutchler's testimony is rather indefinite, it is sufficient to sustain a finding that there was such a contract. It is also sufficient to show that under such contract defendant was obligated to deliver all grain raised on the 250 acres which he had, containing 15% or less moisture content, after he fulfilled his contract for 100 tons previously sold. There appears in the statement of facts a contract of May 17, 1945, between defendant and Farmers Grain Company for 200,000 pounds of grain and from the testimony of C. D. Whatley and a statement introduced it appears that from June 27 to 29, 1945, inclusive, defendant delivered 216,005 pounds of grain to this company. It also appears that from June 15 to 29, 1945, inclusive, defendant delivered to Eastern Seed & Elevator Company 296,415 pounds of grain, of which 97,710 pounds contained 15% moisture. It is true the evidence does not show the acreage from which any of the grain was produced. A reasonable deduction from Mutchler's testimony is that the 250 acres mentioned was all the grain defendant Ray had, and that all of the grain he delivered to the Farmers Grain Company and the Eastern Seed & Elevator Company came from this acreage. There is no evidence that he had any other acreage. This being so, the subject matter of the contract was sufficiently definite to warrant recovery for its breach. Texas Farm Bureau Cotton Ass'n v. Stovall, 113 Tex. 273, 253 S.W. 1101; 37 Tex.Jur. p. 154, Sec. 48.

The evidence was sufficient to show that defendant delivered 97,710 pounds, or approximately 44 tons of grain of 15% moisture content to the Eastern Seed & Elevator Company, which he had agreed to deliver to plaintiffs under the verbal contract of June 9 or 11, 1945. The court erred in granting defendant's motion for peremptory instruction.

In my opinion the judgment should be reversed and the cause remanded.